NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DAVID WILLIAM BRAGG,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12342
Trial Court No. 3AN-12-2262 CR

O P I N I O N

No. 2619 — October 19, 2018

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Carolyn Perkins, Law Offices of Carolyn Perkins, Salt Lake City, Utah, under contract with the Office of Public Advocacy, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard and Wollenberg, Judges.

Judge ALLARD.

David William Bragg was convicted, following a jury trial, of two counts of sexual abuse of a minor in the first degree for sexually abusing his fifteen-year-old

biological daughter, who had recently come to live with him.[1]  On appeal, Bragg argues that the superior court erred in denying his motion to dismiss the indictment.  In his motion, Bragg argued that the prosecutor failed to provide exculpatory evidence to the grand jury in violation of her duty under *Frink v. State*.[2]  For the reasons explained here, we agree with the superior court that the prosecutor complied with her duty under *Frink*.

Bragg also argues that it was plain error for the superior court to fail to instruct the jury that its verdict on Count I had to be based on a different incident of sexual abuse than its verdict on Count II.  Because this point of law was adequately explained to the jury, we find no plain error.

Accordingly, we reject both claims of error and we affirm Bragg's convictions.

*Bragg's claim that the prosecutor violated her duty under <u>Frink v. State</u>*

Under Alaska law, a prosecutor has an affirmative duty to provide exculpatory evidence to the grand jury.[3]  This duty is consistent with the prosecutor's ethical duty to "seek justice, not simply indictment or conviction."[4]  But it is also grounded in the important protective role that the grand jury is intended to serve within Alaska's criminal justice system.[5]  As the Alaska Supreme Court has repeatedly

---

[1]  AS 11.41.434(a)(2).

[2]  *Frink v. State*, 597 P.2d 154 (Alaska 1979).

[3]  *Id.*

[4]  *Id.*; *see also ABA Standards for Criminal Justice: Prosecution and Defense Functions* § 3-1.2(b) (4th ed. 2015) ("The primary duty of the prosecutor is to seek justice within the bounds of the law, not merely to convict.").

[5]  *See* Alaska Const. art. I, § 8 ("No person shall be held to answer for a capital, or
(continued...)

emphasized, "protection of the innocent against oppression and unjust prosecution" ranks among the grand jury's most vital functions.[6]

Under Alaska Criminal Rule 6(q), the grand jury is required to find an indictment "when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant." This rule also provides that "[w]hen the grand jury has reason to believe that other available evidence will explain away the charge, it shall order such evidence to be produced and for that purpose may require the prosecuting attorney to subpoena witnesses."[7] Because the grand jury cannot be expected to call for evidence that it does not know about, the Alaska Supreme Court created the affirmative duty in *Frink*.[8]

Although *Frink* imposes an affirmative duty on the prosecutor, the duty remains narrowly defined.[9] The Alaska Supreme Court did not intend to "turn the prosecutor into a defense attorney."[10] The exculpatory nature of the evidence must

---

[5] (...continued)
otherwise infamous crime, unless on a presentment or indictment of a grand jury ... ."); AS 12.80.020; Alaska R. Crim. P. 7(a) (providing that felony offenses "shall be prosecuted by indictment, unless indictment is waived").

[6] *Cameron v. State*, 171 P.3d 1154, 1156 (Alaska 2007) (quoting *Frink*, 597 P.2d at 165).

[7] Alaska R. Crim. P. 6(q) (emphasis added).

[8] *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979) (explaining that the "requirement that the prosecutor present exculpatory evidence to the grand jury is implicit in the mandate of Criminal Rule 6(q)").

[9] *Id.* at 166; *see also Preston v. State*, 615 P.2d 594, 602 n.21 (Alaska 1980); *Rogers v. State*, 232 P.3d 1226, 1244 (Alaska App. 2010); *Hurn v. State*, 872 P.2d 189, 191 (Alaska App. 1994).

[10] *Frink*, 597 P.2d at 166.

therefore be self-evident.[11] The prosecutor is likewise not required to "develop evidence for the defendant" or to present "every lead possibly favorable to the defendant."[12]

With these principles in mind, we turn to Bragg's claim that the prosecutor violated her duty under *Frink* in this case.

Bragg's claim rests on differences between the victim's first police interview and her second police interview. The police investigation into Bragg's sexual abuse of his fifteen-year-old daughter began with a report to the Office of Children's Services. As a result of this report, Bragg's daughter was interviewed by the police. During this first interview, the police detective asked the daughter if she was having sexual relations with Bragg. In response, the daughter paused for a time, and then she laughed and stated that it was not true. When the detective repeated the question, the daughter paused again, and then she shook her head "no." Despite this denial, the Office of Children's Services found cause to believe that Bragg was sexually abusing his daughter, and the daughter was removed from Bragg's home and placed with relatives.

While Bragg's daughter was living with these relatives, she disclosed to an adult friend that she was "dating" Bragg. The adult friend recorded this conversation on his mobile phone, and the conversation was reported to the Office of Children's Services. This report led to a second police interview by the same detective. At this second interview, the daughter admitted that she was having sexual relations with Bragg.

The detective who conducted both interviews was called as a witness at the grand jury hearing. The prosecutor asked the detective whether Bragg's daughter made

---

[11] *See, e.g.*, *Cathey v. State*, 60 P.3d 192, 195 (Alaska App. 2002) (describing exculpatory evidence as evidence that "tends, in and of itself, to negate the defendant's guilt") (internal citations omitted).

[12] *Frink*, 597 P.2d at 166; *Preston*, 615 P.2d at 602 n.21; *Rogers*, 232 P.3d at 1244; *Hurn*, 872 P.2d at 191.

"any disclosures of sexual abuse" during the first interview. The detective answered, "She did not." The detective then explained that the daughter did not tell the police about her sexual relations with Bragg until the second interview. The grand jury later heard from the daughter, who testified directly about the sexual abuse.

After Bragg was indicted, Bragg's defense attorney filed a motion to dismiss the indictment under *Frink*. According to the defense attorney, there was an important difference between telling the jury that Bragg's daughter had "fail[ed] to disclose" any sexual abuse in the first interview as opposed to telling the grand jury that Bragg's daughter had affirmatively denied the sexual abuse in the first interview. The defense attorney argued that the prosecutor was required to make this distinction clear because the daughter's contradictory responses in the two interviews cast doubt on her overall credibility. The superior court denied the motion to dismiss the indictment, ruling that the prosecutor had complied with her duty to provide exculpatory evidence under *Frink*.

We agree with the superior court that the prosecutor complied with her obligations under *Frink*. Importantly, the prosecutor did not hide the fact that the victim had provided inconsistent responses in the two interviews. Instead, the prosecutor directly elicited this fact from the detective who conducted both interviews. Although Bragg criticizes the manner in which the prosecutor elicited this evidence, the prosecutor was not required to do more than what she did. It is enough that the prosecutor pointed out the inconsistency to the grand jury; she was not required to take the additional step of trying to impeach the victim's credibility, as Bragg appears to believe was required.

Moreover, whatever distinction might exist between the prosecutor's characterization of the first interview as a "failure to disclose" sexual abuse rather than an affirmative denial of the sexual abuse is not significant in this context. What matters is that the prosecutor informed the grand jury of the salient fact that there had been two

– 5 –

interviews with Bragg's daughter and the sexual abuse was not disclosed until the second interview. Had the grand jury wanted to know more about the two interviews, they had sufficient information from which they could do so. They likewise had sufficient information to question Bragg's daughter about her inconsistent responses if they had questions about her credibility after hearing her grand jury testimony. Because the grand jury was given the information it needed to fulfill its obligations under Criminal Rule 6(q), we agree with the superior court that the prosecutor complied with her duty under *Frink*, and we find no merit to this claim of error.

> *Bragg's claim that the court committed plain error by failing to instruct the jury on the need for factual unanimity*

Bragg argues that the trial court erred in failing to instruct the jury that their verdict on Count I had to be based on a different incident than its verdict on Count II. We agree with the State that this claim is meritless. The record shows that the trial court instructed the jury that the two counts were based on two separate incidents of abuse, and that the jurors had to unanimously agree on the conduct underlying each count. In addition, any remaining ambiguity on this matter was sufficiently clarified by both parties in their closing arguments.[13]

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[13] *See Riley v. State*, 60 P.3d 204, 208 (Alaska App. 2002) (explaining that the Court has "repeatedly held that ambiguities and potential flaws in jury instructions can be cured by the arguments of the parties").